Exhibit A

# SUMMONS - CIVIL

JD-CV-1  Rev. 6-11
C.G.S. §§ 51-346, 51-347, 51-349, 51-350, 52-45a,
52-48, 52-259, P.B. Secs. 3-1 through 3-21, 8-1

## STATE OF CONNECTICUT
## SUPERIOR COURT
www.jud.ct.gov

**See page 2 for instructions**

| ☐ | "X" if amount, legal interest or property in demand, not including interest and costs is less than $2,500. |
| ☒ | "X" if amount, legal interest or property in demand, not including interest and costs is $2,500 or more. |
| ☐ | "X" if claiming other relief in addition to or in lieu of money or damages. |

TO: Any proper officer; BY AUTHORITY OF THE STATE OF CONNECTICUT, you are hereby commanded to make due and legal service of this Summons and attached Complaint.

| Address of court clerk where writ and other papers shall be filed *(Number, street, town and zip code)* (C.G.S. §§ 51-346, 51-350) | Telephone number of clerk *(with area code)* | Return Date *(Must be a Tuesday)* |
|---|---|---|
| 95 Washington Street, Hartford 06106 | ( 860 )548-2700 | May 1, 2 012 — Month / Day / Year |

| ☒ Judicial District | G.A. | At *(Town in which writ is returnable)* (C.G.S. §§ 51-346, 51-349) | Case type code *(See list on page 2)* |
|---|---|---|---|
| ☐ Housing Session | Number: | Hartford | Major: T    Minor: 90 |

## For the Plaintiff(s) please enter the appearance of:

| Name and address of attorney, law firm or plaintiff if self-represented *(Number, street, town and zip code)* | Juris number *(to be entered by attorney only)* |
|---|---|
| Bennett & Walsh, PO Box 106, 103 Main Street, Ansonia, CT 06401 | 003262 |

| Telephone number *(with area code)* | Signature of Plaintiff *(if self-represented)* |
|---|---|
| ( 203 ) 735-3321 | |

| Number of Plaintiffs:  2 | Number of Defendants:  7 | ☒ Form JD-CV-2 attached for additional parties |
|---|---|---|

| Parties | Name *(Last, First, Middle Initial)* and Address of Each party *(Number; Street; P.O. Box; Town; State; Zip; Country, if not USA)* | |
|---|---|---|
| First Plaintiff | Name: Zilberman, Kartina as personal representative of the Estate of Miroslav Steven Zilberman Address: 6914 Harlan Square, New Albany, OH 43054 | P-01 |
| Additional Plaintiff | Name: Zilberman, Kartina as next friend, parent and natural guardian of Daniel Zilberman and Sarah Zilberman Address: 6914 Harlan Square, New Albany, OH 43054 | P-02 |
| First Defendant | Name: Northrop Grumman Corporation Address: 2980 Fairview Park Drive, Falls Church, Virginia 22042-4511 | D-50 |
| Additional Defendant | Name: Rolls Royce North America, Inc. Address: 1875 Explorer Street, Suite 200, Reston, Virginia 20190-4511 | D-51 |
| Additional Defendant | Name: Allison Engine Company, Inc. a/k/a Allison Engine Company a/k/a Rolls-Royce Corporation Address: 2001 South Tibbs Avenue, Mail Drop U27, Indianapolis, Indiana 46241 | D-52 |
| Additional Defendant | Name: Hamilton Sundstrand Corporation Address: One Hamilton Road, Windsor Locks, Connecticut 06096 | D-53 |

## Notice to Each Defendant

1. **YOU ARE BEING SUED.** This paper is a Summons in a lawsuit. The complaint attached to these papers states the claims that each plaintiff is making against you in this lawsuit.
2. To be notified of further proceedings, you or your attorney must file a form called an "Appearance" with the clerk of the above-named Court at the above Court address on or before the second day after the above Return Date. The Return Date is not a hearing date. You do not have to come to court on the Return Date unless you receive a separate notice telling you to come to court.
3. If you or your attorney do not file a written "Appearance" form on time, a judgment may be entered against you by default. The "Appearance" form may be obtained at the Court address above or at *www.jud.ct.gov* under "Court Forms."
4. If you believe that you have insurance that may cover the claim that is being made against you in this lawsuit, you should immediately contact your insurance representative. Other action you may have to take is described in the Connecticut Practice Book which may be found in a superior court law library or on-line at *www.jud.ct.gov* under "Court Rules."
5. If you have questions about the Summons and Complaint, you should talk to an attorney quickly. The Clerk of Court is not allowed to give advice on legal questions.

| Signed *(Sign and "X" proper box)* | ☒ Commissioner of the Superior Court ☐ Assistant Clerk | Name of Person Signing at Left James W. Walsh | Date signed 03/26/2012 |
|---|---|---|---|

If this Summons is signed by a Clerk:
a. The signing has been done so that the Plaintiff(s) will not be denied access to the courts.
b. It is the responsibility of the Plaintiff(s) to see that service is made in the manner provided by law.
c. The Clerk is not permitted to give any legal advice in connection with any lawsuit.
d. The Clerk signing this Summons at the request of the Plaintiff(s) is not responsible in any way for any errors or omissions in the Summons, any allegations contained in the Complaint, or the service of the Summons or Complaint.

| | For Court Use Only |
|---|---|
| | File Date |

A True Copy Attest

PETER E. KARPOVICH
State Marshal New Haven County

| I certify I have read and understand the above: | Signed *(Self-Represented Plaintiff)* | Date 03/20/2012 |
|---|---|---|

| Name and address of person recognized to prosecute in the amount of $250 |
|---|
| John Walsh, 103 Main Street, Derby, CT 06418 |

| Signed *(Official taking recognizance; "X" proper box)* | ☒ Commissioner of the Superior Court ☐ Assistant Clerk | Date 01/20/2012 | Docket Number |
|---|---|---|---|

[ Print Form ]     (Page 1 of 2)     [ Reset Form ]

**CIVIL SUMMONS**
**CONTINUATION OF PARTIES**

JD-CV-2  Rev. 4-97

STATE OF CONNECTICUT
**SUPERIOR COURT**

FIRST NAMED PLAINTIFF *(Last, First, Middle Initial)*
**Zilberman, Katrina, as Personal Representative**

FIRST NAMED DEFENDANT *(Last, First, Middle Initial)*
**Northrop Gruman Corporation**

## ADDITIONAL PLAINTIFFS

| NAME *(Last, First, Middle Initial, if individual)* | ADDRESS *(No., Street, Town and ZIP Code)* | CODE |
|---|---|---|
| | | 03 |
| | | 04 |
| | | 05 |
| | | 06 |
| | | 07 |
| | | 08 |
| | | 09 |
| | | 10 |
| | | 11 |
| | | 12 |
| | | 13 |

## ADDITIONAL DEFENDANTS

| NAME *(Last, First, Middle Initial, if individual)* | ADDRESS *(No., Street, Town and ZIP Code)* | CODE |
|---|---|---|
| **United Technologies Corporation** **One Financial Plaza, Hartford, CT 06101** | | 54 |
| | | 55 |
| | | 56 |
| | | 57 |
| | | 58 |
| | | 59 |
| | | 60 |

| | | FOR COURT USE ONLY - FILE DATE |
|---|---|---|
| | 61 | |
| | 62 | |
| | 63 | DOCKET NO. |

**CIVIL SUMMONS-Continuation**

RETURN DATE: MAY 1, 2012

KATRINA ZILBERMAN, AS PERSONAL          : SUPERIOR COURT

REPRESENTATIVE OF THE ESTATE OF         : JUDICIAL DISTRICT OF

MIROSLAV STEVEN ZILBERMAN, ET AL        : HARTFORD

vs.                                     : AT HARTFORD

NORTHRUP GRUMAN CORPORATION,            : AT HARTFORD

ET AL                                   : MARCH 26, 2012


## COMPLAINT AT LAW

THE PARTIES

  1. Plaintiff Katrina Zilberman is an individual, citizen and resident of the State of Ohio, the wife of Lieutenant Miroslav Steven Zilberman, U.S. Navy, deceased, and the parent and natural guardian of her two children Daniel, aged 6 and Sarah, aged 4.

  2. Plaintiff has been appointed  Personal Representative of the Estate of her late husband by the Probate Court of Franklin County, Ohio, a copy of which appointment is attached as Exhibit A.

  3. The defendant Northrop Grumman Corporation ("Grumman") is a corporation, organized and existing under the laws of the State of Delaware and with its principal place of business in Falls Church, Virginia and at all times material hereto was the designer, manufacturer seller, supplier and systems integrator for the E-2C Hawkeye aircraft for the United States Navy.

  4. The defendant Rolls-Royce North America Inc. ("Rolls-Royce") is a corporation organized  and existing under the laws of the State of Delaware with its principal place of business in  Reston, Virginia and at all times material hereto was the manufacturer, seller, supplier and systems integrator for the Allison T56 turboprop engines installed in and on the E

2C Hawkeye aircraft. The T56 engine is commercially available and is installed in and on civilian aircraft such as the Lockheed Electra and the Convair 580.  Upon information and belief, defendant Rolls-Royce acquired defendant Allison Engine Company in or about the year 1995.

      5.      The defendant Allison Engine Company, Inc., a/k/a/ Allison Engine Company a/k/a Rolls-Royce Corporation ("Allison") is a corporation organized and existing under the laws of the State of Delaware with its principal place of business in Indianapolis, Indiana and at all times material hereto was the designer, manufacturer, seller, supplier and systems integrator for the Allison T56 turboprop engines installed in and on the E-2C Hawkeye aircraft.  The T56 engine is commercially available and is installed in and on civilian aircraft such as the Lockheed Electra and the Convair 580. Upon information and belief, defendant Rolls-Royce acquired defendant Allison Engine Company in or about the year 1995.

      6.      The defendant Hamilton Sundstrand Corporation ("Hamilton Sundstrand") is a corporation organized and existing under the laws of the State of Delaware with its principal place of business in Windsor Locks, Connecticut and  at all times material hereto was the designer, manufacturer, seller, supplier and systems integrator of the New Propeller 2000, also  known as the New Prop 2000, also known as the NP2000, which is a commercially designed and developed, off-the-shelf, constant speed  eight bladed propeller installed in and on the E-2C Hawkeye aircraft.

      7.      The defendant United  Technologies Corporation ("UTC") is a corporation organized and existing under the laws of the State of Delaware with its principal place of business in  Hartford, Connecticut and at all times material hereto was the designer, manufacturer, seller, supplier and systems integrator of the New Propeller 2000, also known as the New Prop 2000, also known as the NP2000, which is a commercially designed and  developed, off-the-shelf, constant speed  eight bladed propeller installed in and on the E-2C Hawkeye aircraft for use with the Rolls-Royce Allison T56 engines.

2

BACKGROUND OF THIS LAWSUIT

8.      The E-2C Hawkeye aircraft is an aircraft-carrier based Airborne Early Warning and Battle Management aircraft operated by the United States Navy and other allied military forces around the world.

9.      The crew of an E-2C Hawkeye consists of two Naval Aviators who pilot the aircraft and, depending upon the mission, one, two or three Naval Flight Officers, who operate the complex sensors and communication suite onboard the aircraft.

10.     The E-2C Hawkeye does not have ejection seats to facilitate crew egress; rather, the crew is equipped with parachutes and, in the event of a catastrophic emergency, the crew is forced to "bail out" – or jump out of the aircraft, manually deploying their own parachutes.

11.     The E-2C Hawkeye is powered by two T56 engines which provide a total of 10,200 horsepower through the NP2000 eight-bladed propeller installed on each engine.

12.     As a result of design and manufacturing flaws the T56 engines have an appalling and dangerous history of failures such that these engines were not supplied in accordance with any government specifications, they did not and do not meet government specifications, and the defendants herein actually knew and continue to know that the failure rate of these engines is unacceptably high, did not and does not meet government specifications, and consistently put the lives of this country's finest pilots and flight officers in grave danger.

13.     The defendants knew, or should have known, about the dangerous propensity of T56 engine failures throughout the operating history of this engine, in both civilian and military aircraft, which woefully failed to meet reliability requirements.

14.     Plaintiff's decedent and fully qualified Naval Aviator Lieutenant Zilberman himself survived three separate engine failures of T56 engines within one year of this fatal accident.

15.     The NP2000 propeller was designed and manufactured as an "off-the-shelf" product available to the commercial aviation industry, certified by the Federal Aviation Administration ("FAA") in about the year 2000 for use in civilian aircraft, and it was not designed nor was it manufactured pursuant to a government contract or in accordance with any government design

3

specification whatsoever.

16.     Propellers used in both airline transport and military applications must have the capability to become aerodynamically streamlined in the event of an engine failure so that a stagnant propeller is producing the minimum amount of parasitic drag and the aircraft is capable of being controlled by the pilot without a loss of altitude.  This aerodynamic streamlining of the propeller is known as "feathering."

17.     The NP2000 propeller contains a critical and gravely dangerous defect where it will not feather if and when an engine failure occurs.

18.     The defendants knew, or should have known, about this critical and gravely dangerous defect through the design, testing and evaluation of the NP2000 propeller system.

19.     The defendants knew, or should have known, about this critical and gravely dangerous defect when another E-2C Hawkeye aircraft experienced this exact failure to feather on or about February 27, 2008, causing the complete loss of an E-2C Hawkeye aircraft in Norfolk, Virginia.

20.     Grumman was and is charged, by virtue of its contract with the United States Government, with supplying components for use in the E-2C Hawkeye aircraft that meet the government's performance-only specifications, and not any detailed or government-approved design specifications.

21.     By virtue of its contract with the United States Government, Grumman did and does supply E-2C Hawkeye aircraft with the T56 engine and the NP2000 propeller that was selected by, and was provided in the sole discretion of, Grumman for use on the E-2C Hawkeye aircraft.

22.     Grumman began installing the NP2000 propeller system in U.S. Navy fleet E-2C Hawkeye aircraft in or about the year 2004.  The eight-bladed NP2000 propeller system was intended by Grumman to be a replacement for the 4-bladed propeller that was supplied with E-2C Hawkeye aircraft for decades.

23.     The NP2000 propeller system, manufactured by defendants Hamilton Sundstrand and UTC, was and is a propeller specifically approved for use in civilian aircraft by the Federal Aviation Administration and was selected solely by Grumman for use in the E-2C Hawkeye

4

aircraft in an attempt to reduce cost and to integrate an "off the shelf" product into this airframe.

24.     Grumman was and is, by virtue of its contract with the United States Government, the systems integrator of the T56 engines and the NP2000 propeller system in that Grumman is responsible for those systems working both separately and also working together onboard E-2C Hawkeye aircraft to provide aircrew with the means for safe flight.

25.     Grumman was and is required to provide emergency procedures and performance limitations for the E-2C Hawkeye aircraft.

26.     Upon the installation of the NP2000 propeller system, Grumman failed to provide updated emergency procedures and performance limitations and instead instructed aircrew to rely upon the old emergency procedures and performance limitations that were published with  the original, 4-bladed propeller and which were unverified, untested, and inaccurate when used with the new NP2000 propeller system.

27.     Grumman is further responsible for the automatic flight control system installed on the E-2C Hawkeye aircraft, which did not and does not allow for aircraft control during single engine operation and therefore dooms the pilot in command of the aircraft to certain death after his crew bails out of a crippled aircraft.

28.     All contracts for the E-2C aircraft, its engine, its propeller, and its automatic flight control system were performance-only contracts that did not specify the precise manner of construction.

THIS ACCIDENT

29.     On March 31,  2010, Lieutenant Zilberman was the aircraft commander of an E-2C Hawkeye aircraft with call sign "Bluetail 601" operated from the U.S. Navy aircraft carrier USS DWIGHT D. EISENHOWER (CVN 69) ("IKE") in the Gulf of Oman.

30.     On March 31, 2012, Lieutenant Zilberman's crew consisted of one other Naval Aviator and two Naval Flight Officers.  They flew a battle management mission conducted in support of OPERATION ENDURING  FREEDOM over the territories of Pakistan and Afghanistan.

31.     After mission completion, Bluetail 601 was returning to IKE, when it experienced an

5

engine malfunction in one of its two T56 engines. The crew of Bluetail 601, led by aircraft commander Lieutenant Zilberman, handled the malfunction in accordance with the applicable emergency procedures and eventually shut the engine down.

32. The loss of the T56 engine by Bluetail 601 on March 31, 2010 was one of many engine failures that occur with great frequency, despite the performance requirement of a remote or extremely remote probability of engine failure on this aircraft.

33. After the T56 engine was shut down on Lieutenant Zilberman's aircraft, a gravely dangerous defect in the NP2000 propeller resulted in its failure to feather as commanded, causing extensive parasitic drag that resulted in aircraft controllability problems and a constant descent towards the water even with the other engine operating.

34. The failure-to-feather defect experienced by Bluetail 601 on March 31, 2010 was not the first time that this defect occurred. In fact, this defect resulted in the loss of an E-2C Hawkeye aircraft just over 2 years before this flight.

35. The extensive parasitic drag caused by the unfeathered propeller rendered Bluetail 601 barely controllable as it continued its now rapid descent toward the water as it approached IKE.

36. Lieutenant Zilberman, the aircraft commander, ordered his crew to bail out of the crippled aircraft while he continued to fly the barely controllable aircraft in a manner and configuration most consistent with the safe egress of the crew. The three other crew members of Bluetail 601 safely jumped out of the aircraft, deployed their parachutes, and survived in the water before being rescued by a United States Navy helicopter.

37. Meanwhile, with his crew safe, Lieutenant Zilberman was trapped in an aircraft that could barely be controlled.

38. Bluetail 601 could not be trimmed for hands-off flight and it did not have an automatic flight control system that could compensate for the parasitic drag of an unfeathered propeller.

39. Witnesses onboard IKE watched as Bluetail 601, with only Lieutenant Zilberman

6

onboard, sustained multiple departures from wings-level flight followed by a departure from controlled flight as the aircraft impacted the water in close proximity to the IKE.

40.     Lieutenant Zilberman's remains were not recovered and the United States Navy posthumously awarded him the Distinguished Flying Cross for his exceptional airmanship and heroic actions in giving his life for his crew.

## THE DAMAGES SUFFERED

41.     The plaintiff claims all damages that are recoverable under the applicable Wrongful Death and Survival Statutes including but not limited to conscious pain and suffering, loss of inheritance, fear of impending death by mutilation, loss of care comfort companionship and consortium, loss of net accumulations, loss of care guidance and tutelage, loss of life's pleasures, funeral and estate expenses, loss of earnings such other damages as are available under the law.

42.     Plaintiff also makes claim in her own right for losses personal to her including loss of gifts, support, nursing care and assistance in raising their two children, and such other damages as are available under the law.

43.     Plaintiff also makes claim for the losses suffered by their two children for the expenses that she will now have to incur due to the loss of her husband and his partnering in the raising of their children, and such other damages as are available under the law.

44.     Plaintiff also claims payment of punitive damages for the willful deliberate and wholly unjustified exposure of her husband, who chose to serve his country and whose sacrifice was rewarded by deceit and silence, because the defendants knew by their conduct that the consequences for him was death.

### Count I – Strict Liability (As To Rolls-Royce and Allison)

1. - 44.  Plaintiff incorporates by reference paragraphs 1-44.

45.     The defendants are liable to the plaintiff under the theory of Strict Liability in that:

7

a.    The T56 engine was defective.

b.    The T56 engine was unreasonably dangerous.

c.    The T56 engine was in the same condition the day it failed as it was at time of delivery.

d.    The failure of the T56 engine was the result of defects.

e.    This crash was the result of the failure of the T56 engine to provide the flight crew with a reliable engine and means for aircraft propulsion.

46.    The defects in the E-2C Hawkeye and the T56 engine include but are not limited to the following:

a.    Dangerous and defective design in that the T56 engine installed on the E-2C Hawkeye was prone to failure at a rate that is not consistent with safe flight.

b.    Dangerous and defective manufacture in that the T56 engine installed on the E-2C Hawkeye was prone to failure at a rate that is not consistent with safe flight.

c.    Dangerous and defective systems integration in that the known failure modes of the T56 engine were not accounted for and the crew was not protected from the impact on other systems from the failure of the T56 engine, including the NP2000 propeller system.

d.    Dangerous and defective system integration with the NP2000 propeller system.

e.    Dangerous and defective instructions as there was nothing to alert flight crew or maintenance personnel of the impending failures of this engine system and its effect upon the NP2000 propeller, which was known only to defendants.

f.    Dangerous and defective warnings about T56 engine failures.

g.    Dangerous and defective operating instructions, operating limitations, operating procedures and emergency procedures for T56 engines.

h.    Dangerous and defective systems integration  of the automatic flight

8

control system that did not allow for use during engine failures or propeller failures.

       i.      Dangerous and defective warnings about automatic flight control defects that do not allow for safe bail out of the crew during engine failures or propeller failures.

       j.      Dangerous and defective post installation conduct in that, in spite of their obligation to be candid and act in good faith, the defendants did not even do so after Lieutenant Zilberman was lost.

    47.     As a direct and/or proximate result of the defects described, Lieutenant Zilberman's aircraft suffered a loss of engine power, loss of propeller control, loss of aircraft control, and a crash that took his life.

WHEREFORE, plaintiff claims money damages.

<u>Count II - Negligence (As To Rolls-Royce and Allison)</u>

1. – 47.  Plaintiff incorporates paragraphs 1-47 by reference.

    48.     The defendants were  negligent and that negligence was the  direct and/or proximate cause of the death of the Lieutenant Zilberman.

    49.     The negligence of the defendants consisted of the following:

       a.      Failing to properly and adequately design the T56 engine.

       b.      Failing to properly and adequately test the T56 engine.

       c.      Failing to properly and adequately build the T56 engine.

       d.      Failing to properly and adequately install the T56 engine.

       e.      Failing to properly and adequately integrate the T56 engine into the E-2C Hawkeye aircraft.

       f.      Failing to properly and adequately integrate the T56 engine with the NP2000 propeller.

       g.      Failing to properly and adequately design, build and integrate the engine and propeller systems.

       h.      Failing to properly and adequately monitor the performance of the T56

engine.

       i.      Failing to properly and adequately inform the Government of malfunctions, defects and failures of T56 engines so steps could be taken to train and equip flight crews with necessary procedures to ensure safe flight.

       j.      Failing to properly and adequately inform the Government of the malfunctions, defects and failures of T56 engines so adequate manuals could have been prepared for maintenance and flight crews.

       k.      Failing to properly and adequately redesign the T56 to correct defects that were known, or should have been known.

       l.      Failing to properly and adequately take all reasonable steps to provide the flight crew with redundancy given the known history of T56 defects.

       m.      Failing to properly and adequately design, build and integrate the automatic flight control system in the E-2C Hawkeye aircraft for use during engine and propeller failures.

       n.      Failing to provide appropriate warnings.

       o.      Failing to provide appropriate operating instructions, operating limitations, operating procedures and emergency procedures.

       p.      Failing to properly and adequately perform their contracts in good faith to protect those who serve their country.

      50.      As a direct and/or proximate result of the negligence of the defendants, Lieutenant Zilberman's aircraft suffered a loss of engine power, loss of propeller control, loss of aircraft control, and a crash that took his life.

      WHEREFORE, plaintiff claims money damages.

### Count III – Breach of Warranty (As To Rolls-Royce and Allison)

1. – 50. Plaintiff incorporates paragraphs 1-50 by reference.

      51.      There existed at the time of this accident certain warranties of fitness for a

particular purpose and merchantability that were implied from the contracts that were entered into between the United States Government and these defendant subcontractors regardless of any writing to eliminate or limit them.

52.    The warranty of fitness for a particular purpose was breached by the defendants for the reasons set forth in Counts I and II in that the T56 engine was completely and wholly inadequate for the purpose intended, safe flight.

53.    The warranty of merchantability was breached by these defendants because the T56 engine was not of fair or average quality of other engines made by competitors nor was it of the same quality as others manufactured by these defendants in that this one failed to function as required.

54.    The warranty of merchantability was breached by these defendants because the T56 engine was not of fair or average quality of other engines.

55.    As a direct result of the breaches of warranty by these defendants Lieutenant Zilberman lost his life.

WHEREFORE, plaintiff claims money damages.

## Count IV – Breach of Contract (As To Rolls-Royce and Allison)

1. – 55. Plaintiff incorporates paragraphs 1-55 by reference.

56.    The United States Government entered into a performance-only contract with these defendants for the supply of a power plant for the E-2C Hawkeye aircraft.

57.    The purpose of that contract was to provide the United States Navy with engines on an aircraft that would provide superior all-weather battle management, communication command and control capabilities.

58.    The engine requirements of that contract were performance-only requirements only that did not specify the precise manner of construction.

59.    The design, manufacture, testing and systems integration of the engines was the responsibility of these defendants pursuant to the performance-only requirements of the contract.

60.    The entire objective of the engine portion of the contract was to benefit the flight

11

crew of the aircraft, in this instance Lieutenant Zilberman.

61.     It was the objective, purpose and specific intention of the parties that the beneficiary of this contract was the flight crew and the specific objective that they be equipped with aircraft engines that would provide, under all anticipatable flight conditions and in combat, sufficient thrust and power so that the aircraft would survive the fight and the flight.

62.     These defendants breached their contract for the creditor beneficiary, Lieutenant Zilberman by failing to meet their obligations as set forth in counts I-III.

WHEREFORE, plaintiff claims money damages.

### Count V - Fraud (As To Rolls-Royce and Allison)

1. – 62. Plaintiff incorporates paragraphs 1-62 by reference.

63.     The defendants knew, beginning many years ago, that the T56 engines were unreasonably dangerous and prone to failure.

64.     In numerous meetings, conversations, and communications, the defendants repeatedly failed to disclose to the government the true nature of the flaws of the T56 engine systems and, instead, falsely represented to the government that the engines would provide sufficient thrust and that the probability of failure would be remote or highly remote.

65.     The defendants charged the government millions of dollars for aircraft engines that could not and did not provide the aircrew with the basic needs of safe flight.

66.     The defendants committed actual fraud on the United States Government and therefore its employee Lieutenant Zilberman by knowingly supplying an unreasonably dangerous and defective T56 engine for the E-2C Hawkeye.

67.     The fraud of the defendants included but is not limited to the following:

a.     Representing that the  T56 engine  would meet the performance requirements of the engine contract when these defendants knew they did not.

b.     Representing that the T56 engine met the reliability requirements of the engine contract when these defendants knew they did not.

12

c.      Representing that the T56 engine met systems integration requirements when these defendants knew they did not.

d.      Representing that the T56 engine would work with the NP2000 propeller system when these defendants knew they would not.

e.      Representing that they had fixed or cured any defects in the T56 engine before installing them on E-2C Hawkeye aircraft when these defendants knew they had not.

f.      Representing that they had performed adequate testing and evaluation of the T56 engine before installing them on E-2C Hawkeye aircraft when these defendants knew they had not.

g.      Representing that they had provided sufficient maintenance information to allow diagnostics and repair in the field when these defendants knew they had not.

h.      Representing that they had provided appropriate warnings when these defendants knew they had not.

i.      Representing that they had provided appropriate operating instructions, operating limitations, operating procedures, and emergency procedures when these defendants knew they had not.

j.      Representing that they had provided safe and reliable systems that would allow our fighting men and women to survive the fight when these defendants knew they had not.

68.      As a direct result of the fraud and deceit of the defendants plaintiff demands punitive damages.

WHEREFORE, plaintiff claims money damages.

### Count VI – Strict Liability (As Hamilton Sundstrand and UTC)

1. – 68. Plaintiff incorporates paragraphs 1-68 by reference.

69.      The defendants are liable to the plaintiff under the theory of Strict Liability in that:

13

a.    The NP2000 propeller was defective.

b.    The NP2000 propeller was unreasonably dangerous.

c.    The NP2000 propeller was in the same condition the day it failed as it was at time of delivery.

d.    The failure of the NP2000 propeller was the result of the defects.

e.    The gravely dangerous defect of the NP2000 propeller was such that none of the designed feathering methods caused the propeller to feather.

f.    The gravely dangerous defect of the NP2000 propeller was such that no pitch control could be had.

g.    The gravely dangerous defect of the NP2000 propeller was such it produced dangerous excess drag.

h.    The NP2000 propeller was supplied with dangerous and defective warnings.

i.    The NP2000 propeller was supplied with dangerous and defective operating instructions, operating limitations, operating procedures and emergency procedures.

j.    The E-2C Hawkeye aircraft was capable only of a descent even with one engine running because of the grave defects of the NP2000 propeller system.

70.    The defects in the NP2000 propeller system include but are not limited to the following:

a.    Dangerous and defective design in that the NP2000 propeller system is subject to numerous faults and malfunctions including failure to feather, excessive drag and excessive failure rate such that it is not suitable to support safe flight in the E-2C Hawkeye.

b.    Dangerous and defective manufacture in that the NP2000 propeller system is subject to numerous faults and malfunctions including failure to feather, excessive drag and excessive failure rate such that it is not suitable to support safe flight in the E-2C Hawkeye.

14

c.      Dangerous and defective systems integration in that the known failure modes were not accounted for and the crew was not protected from the impact on other systems from the failure of the NP2000 propeller system.

d.      Dangerous and defective system integration with the T56 engines.

e.      Dangerous and defective instructions as there was nothing to alert maintenance personnel of the failures of this system known only to defendants.

f.      Dangerous and defective warnings as there were none.

g.      Dangerous and defective operating instructions, operating limitations, operating procedures and emergency procedures.

h.      Dangerous and defective systems integration of the automatic flight control system that did not allow for use during engine failures or propeller failures.

i.      Dangerous and defective warnings about automatic flight control defects that do not allow for safe bail out of the crew during engine failures or propeller failures.

j.      Dangerous and defective post installation conduct in that, in spite of their obligation to be candid and act in good faith, the defendants did not even do so after Lieutenant Zilberman was lost.

71.      As a direct and/or proximate result of the described, Lieutenant Zilberman's aircraft suffered a loss of engine power, loss of propeller control, loss of aircraft control, and a crash that took his life.

WHEREFORE, plaintiff claims money damages.

<u>Count VII – Negligence (As To Hamilton Sundstrand and UTC)</u>

1 – 71. Plaintiff incorporates paragraphs 1-71 b y reference.

72.  The defendants were  negligent and that negligence was the  direct and/or proximate cause of the death of the plaintiff's decedent.

15

73. The negligence of the defendants consisted of the following:

a. Failing to properly and adequately design the NP2000 propeller.

b. Failing to properly and adequately test the NP2000 propeller.

c. Failing to properly and adequately build the NP2000 propeller.

d. Failing to properly certify the NP2000 propeller in accordance with Title 14 of the Code of Federal Regulations.

e. Failing to inform the FAA about the malfunctions and defects in the NP2000 propeller.

f. Failing to properly and adequately install NP2000 propeller.

g. Failing to properly integrate the NP2000 propeller in the E-2C Hawkeye aircraft.

h. Failing to properly integrate the NP2000 propeller with the T56 engine.

i. Failing to properly and adequately design, build and integrate the T56 engines and the NP2000 propeller.

j. Failing to properly and adequately monitor the performance of the NP2000 propeller.

k. Failing to properly and adequately inform the Government so steps could be taken to train and equip flight crews.

l. Failing to properly and adequately inform the Government of the malfunctions, defects and failures of the NP2000 propeller so adequate manuals could have been prepared for maintenance and flight crews.

m. Failing to properly and adequately redesign the NP2000 propeller to correct known deficiencies.

n. Failing to properly and adequately take all reasonable steps to provide the flight crew with redundancy given the known history of the NP2000 propeller malfunctions, defects and failures.

16

o.      Failing to provide warnings.

p.      Failing to provide operating instructions, operating limitations, operating procedures and emergency procedures.

q.      Failing to properly design, manufacture, certify and supply the NP2000 in accordance with the applicable regulations.

r.      Failing to properly and adequately design, build and integrate the automatic flight control system in the E-2C Hawkeye aircraft for use during engine and propeller failures

s.      Failing to properly and adequately perform their contracts in good faith to protect those who serve their country.

74.     As a direct and/or proximate result of the described negligence, Lieutenant Zilberman's aircraft suffered a loss of engine power, loss of propeller control, loss of aircraft control, and a crash that took his life.

WHEREFORE, plaintiff claims money damages.

<u>Count VIII – Breach of Warranty (As To Hamilton Sundstrand and UTC)</u>

1. – 74. Plaintiff incorporates paragraphs 1-74 by reference.

75.     There existed at the time of this accident certain warranties of fitness for a particular purpose and merchantability that were implied from the contracts that were entered into between the United States Government and these defendant subcontractors regardless of any writing to eliminate or limit them.

76.     The warranty of fitness for a particular purpose was breached by the defendants for the reasons set forth in Counts VI and VII in that the NP2000 propeller was completely and wholly inadequate for the purpose intended, safe flight.

77.     The warranty of merchantability was breached by these defendants because the NP2000 propeller was not of fair or average quality of other propellers made by competitors nor were they of the same quality as others manufactured by these defendants in that this one failed to function as required.

17

78.     The warranty of merchantability was breached by these defendants because the T56 engine was not of fair or average quality of other engines.

79.     As a direct result of the breaches of warranty by these defendants Lieutenant Zilberman lost his life.

WHEREFORE, plaintiff claims money damages.

Count IX – Breach of Contract (As To Hamilton Sundstrand and UTC)

1. – 79. Plaintiff incorporates paragraphs 1-79 by reference.

80.     The  United States Government entered into a performance-only contract with these defendants for the supply of a propeller for the E-2C Hawkeye aircraft.

81.     The  purpose of that contract was to provide the United States Navy with propellers on an aircraft that would provide superior all-weather battle management, communication command and control capabilities.

82.     The propeller requirements of that contract were performance-only requirements that did not specify the precise manner of construction.

83.     The selection, design, manufacture, testing and systems integration of the propeller was the responsibility of these defendants pursuant to the performance-only contract.

84.     These defendants selected, and sold, supplied, and installed on the E-2C Hawkeye, pursuant to the contract, the NP2000 propeller, which was designed, manufactured, and certified for flight on civilian aircraft pursuant to approval by the FAA in accordance with Title 14 of the Code of Federal Regulations.

85.     The entire objective of the propeller system portion of the contract was to benefit the flight crew of the aircraft, in this instance Lieutenant Zilberman.

86.     It was the objective, purpose and specific intention of the parties that the beneficiary of this contract was the flight crew and the specific objective that he or she be equipped with an aircraft and its integrated propellers that would provide, under all anticipatable flight conditions and in combat, sufficient thrust, power and propeller control so that the aircraft would survive the fight and the flight.

18

87.     The defendants breached their contract for the creditor beneficiary, Lieutenant Zilberman by failing to meet their obligations as set forth in counts VI-VIII.

WHEREFORE, plaintiff claims money damages.

### Count X – Fraud (As to Hamilton Sundstrand and UTC)

1. – 87. Plaintiff incorporates paragraphs 1-87 by reference.

88.     The defendants knew, beginning in the late 1990's, that the NP2000 propellers were unreasonably dangerous and prone to failure.

89.     In numerous meetings, conversations, and communications, the defendants repeatedly failed to disclose to the government the true nature of the flaws of the NP2000 systems and, instead, falsely represented to the government that the propellers would provide sufficient power and that their failure, failure to feather, and the development of excessive drag would be improbable or highly improbable.

90.     In numerous submissions to the Federal Aviation Administration in and around the year 2000, these defendants falsely certified that the likelihood of the NP2000 producing "excessive drag" was and is "extremely remote" and that the likelihood of the "inability to feather" the NP2000 was "remote." These statements were and are knowingly false.

91.     The defendants charged the government millions of dollars for a propeller that could not and did not provide the aircrew with the basic needs of safe flight.

92.     The defendants committed actual fraud on the United States Government and therefore its employee Lieutenant Zilberman by knowingly supplying an unreasonably dangerous and gravely defective NP2000 propeller.

93.     The fraud of the defendants included but is not limited to the following:

a.     Representing that the NP2000 propeller would meet the certification requirements of Title 14 of the Code of Federal Regulations when these defendants knew it did not.

b.     Representing that the NP2000 propeller would meet the performance requirements of the propeller contract when these defendants knew it did not.

19

c.       Representing that the NP2000 propeller met the reliability requirements of the propeller contract when these defendants knew it did not.

d.       Representing that the NP2000 propeller met systems integration requirements when these defendants knew it did not.

e.       Representing that the NP2000 propeller would reliably and safely work with the T56 engine on the E-2C Hawkeye aircraft when these defendants knew it would not.

f.       Representing that they had fixed or cured any deficiencies in the NP2000 propeller system before installing it on the E-2C Hawkeye aircraft when these defendants knew they had not.

g.       Representing that they had provided sufficient maintenance information to allow diagnostics and repair in the field when these defendants knew they had not.

h.       Representing that they had provided safe and reliable systems that would allow our fighting men and women to survive the fight when these defendants knew they had not.

i.       Representing that they had provided appropriate warnings when these defendants knew they had not.

j.       Representing that they had provided appropriate operating instructions, operating limitations, operating procedures and emergency procedures when these defendants knew they had not

94.       As a direct result of the fraud and deceit of the defendants plaintiff demands punitive damages.

WHEREFORE, plaintiff claims money damages.

## Count XI – Strict Liability (As To Grumman)

1. -94. Plaintiff incorporates paragraphs 1-94 b y reference.

95.       Grumman is liable to the plaintiff under the theory of Strict Liability in that:

a.       The E-2C Hawkeye aircraft was defective.

20

c.      Representing that the NP2000 propeller met the reliability requirements of the propeller contract when these defendants knew it did not.

d.      Representing that the NP2000 propeller met systems integration requirements when these defendants knew it did not.

e.      Representing that the NP2000 propeller would reliably and safely work with the T56 engine on the E-2C Hawkeye aircraft when these defendants knew it would not.

f.      Representing that they had fixed or cured any deficiencies in the NP2000 propeller system before installing it on the E-2C Hawkeye aircraft when these defendants knew they had not.

g.      Representing that they had provided sufficient maintenance information to allow diagnostics and repair in the field when these defendants knew they had not.

h.      Representing that they had provided safe and reliable systems that would allow our fighting men and women to survive the fight when these defendants knew they had not.

i.      Representing that they had provided appropriate warnings when these defendants knew they had not.

j.      Representing that they had provided appropriate operating instructions, operating limitations, operating procedures and emergency procedures when these defendants knew they had not.

94.     As a direct result of the fraud and deceit of the defendants plaintiff demands punitive damages.

WHEREFORE, plaintiff claims money damages.

### Count XI – Strict Liability (As To Grumman)

1. -94. Plaintiff incorporates paragraphs 1-94 b y reference.

95.     Grumman is liable to the plaintiff under the theory of Strict Liability in that:

a.      The E-2C Hawkeye aircraft was defective.

20

b.      The E-2C Hawkeye aircraft was unreasonably dangerous.

c.      The E-2C Hawkeye aircraft was in the same condition the day it failed as it was at time of delivery.

d.      The failure of the E-2C Hawkeye aircraft was the result of the defects.

e.      The E-2C Hawkeye incorporated the defective T56 engine system.

f.      The E-2C Hawkeye incorporated the defective NP2000 propeller system.

g.      The E-2C Hawkeye incorporated a defective automatic flight control system that did not allow for hands-off flight and pilot bailout.

h.      The E-2C Hawkeye aircraft was capable only of a descent even with one engine running because of the grave defects of the NP2000 propeller system.

i.      The E-2C Hawkeye aircraft was uncontrollable even at speeds where it was supposed to be controllable.

j.      The E-2C Hawkeye aircraft's published performance limitations were dangerous and gravely defective because they were inadequate, inaccurate, untested, and unverified.

k.      The E-2C Hawkeye aircraft was supplied with dangerous and defective warnings.

l.      The E-2C Hawkeye aircraft was supplied with dangerous and defective operating instructions, operating limitations, operating procedures, and emergency procedures.

m.      The E-2C Hawkeye aircraft's published emergency procedures were dangerous and gravely defective because they were inadequate, inaccurate, untested and unverified.

n.      The E-2C Hawkeye's systems, and specifically the engine, propeller, and automatic flight control systems, were dangerously and defectively integrated into the airframe such that the result was a dangerous and defective product, the E-2C Hawkeye aircraft itself.

96.     This crash was the result of the failure of the E-2C Hawkeye to provide the flight crew

21

with reliable propulsion, a controllable and feather able propeller, a means for aircraft control and redundant systems.

97.     The defects in the E-2C Hawkeye include, but are not limited to, the following:

a.     Dangerous and defective design in that the T56 engine installed on the E-2C Hawkeye was prone to failure at a rate that is not consistent with safe flight.

b.     Dangerous and defective manufacture in that the T56 engine installed on the E-2C Hawkeye was prone to failure at a rate that is not consistent with safe flight.

c.     Dangerous and defective systems integration in that the known failure modes of the T56 engine were not accounted for and the crew was not protected from the impact on other systems from the failure of the T56 engine, including the NP2000 propeller system.

d.     Dangerous and defective systems integration in that the known failure modes of the NP2000 propeller system were not accounted for and the crew was not protected from the impact on other systems from the failure of the NP2000 propeller.

e.     Dangerous and defective systems integration of the T56 engine and the NP2000 propeller.

f.     Dangerous and defective instructions as there was nothing to alert flight crew or maintenance personnel of the impending failures of this engine system, which was known only to defendants.

g.     Dangerous and defective warnings about T56 engine failures.

h.     Dangerous and defective warnings about NP2000 propeller failures.

i.     Dangerous and defective design in that the NP2000 propeller system installed on the E-2C Hawkeye is subject to numerous faults and malfunctions including failure to feather, excessive drag and excessive failure rate such that it is not suitable to support safe flight.

j.     Dangerous and defective manufacture in that the NP2000 propeller system installed on the E-2C Hawkeye is subject to numerous faults and malfunctions including

22

failure to feather, excessive drag and excessive failure rate such that it is not suitable to support safe flight.

k.      Dangerous and defective instructions as there was nothing to alert flight crew or maintenance personnel of the impending failures of this propeller system, which was known only to defendants.

l.      Dangerous and defective warnings.

m.      Dangerous and defective operating instructions, operating limitations, operating procedures and emergency procedures.

n.      Dangerous and defective systems integration of the automatic flight control system that did not allow for use during engine failures and propeller failures.

o.      Dangerous and defective warnings about automatic flight control system defects that do not allow for safe bail out of the crew during engine failures or propeller failures.

p.      Dangerous and defective post installation conduct in that, in spite of their obligation to be candid and act in good faith, the defendants did not even do so after Lieutenant Zilberman was lost.

98.      As a direct and/or proximate result of the defects described, Lieutenant Zilberman's aircraft suffered a loss of engine power, loss of propeller control, loss of aircraft control, and a crash that took his life.

WHEREFORE, plaintiff claims money damages.

## Count XII – Negligence (As To Grumman)

1. – 98. Plaintiff incorporates paragraphs 1-98 by reference.

99.      The defendants were negligent and that negligence was the direct and/or proximate cause of the death of the Lieutenant Zilberman.

100.      The negligence of the defendants consisted of the following:
a.      Failing to properly and adequately design the E-2C Hawkeye aircraft.

23

b.      Failing to properly and adequately test the E-2C Hawkeye aircraft.

c.Failing to properly and adequately build the E-2C Hawkeye aircraft.

d.      Failing to properly and adequately install the E-2C Hawkeye aircraft.

e.      Failing to properly and adequately integrate the T56 engine into the E-2C Hawkeye aircraft.

f.      Failing to properly and adequately integrate the NP2000 propeller system into the E-2C Hawkeye aircraft.

g.      Failing to properly and adequately monitor the performance of the T56 engines.

h.      Failing to properly and adequately monitor the performance of the NP2000 propeller system.

i.      Failing to properly and adequately design, build and integrate the engine and propeller systems.

j.      Failing to properly and adequately design,  build and integrate the automatic flight control system in the E-2C Hawkeye aircraft.

k.      Failing to properly and adequately perform their contracts in good faith to protect those who serve their country.

l.      Failing to properly and adequately inform the Government of malfunctions, defects and failures so steps could be taken to train and equip flight crews with necessary procedures to ensure safe flight.

m.      Failing to properly and adequately inform the government of the defects in the E-2C Hawkeye  aircraft so adequate manuals could have been prepared for maintenance and flight crews.

n.      Failing to properly and adequately redesign E-2C Hawkeye  aircraft to correct known deficiencies.

o.      Failing to properly and adequately take all reasonable steps to provide the flight crew with redundancy given the known history of E-2C Hawkeye defects.

24

p.      Failing to provide appropriate warnings.

q.      Failing to provide appropriate operating instructions, operating limitations, operating procedures, and emergency procedures.

r.      Failing to properly and adequately perform their contracts in good faith to protect those who serve their country.

101.    As a direct and/or proximate result of the negligence of the defendants, Lieutenant Zilberman's aircraft suffered a loss of engine power, loss of propeller control, loss of aircraft control, and a crash that took his life.

WHEREFORE, plaintiff claims money damages.

### Count XIII – Breach of Warranty (As To Grumman)

1. – 101. Plaintiff incorporates paragraphs 1-101 by reference.

102.    There existed at the time of this accident certain warranties of fitness for a particular purpose and merchantability that were implied from the contracts that were entered into between the United States Government and Grumman regardless of any writing to eliminate or limit them.

103.    The warranty of fitness for a particular purpose was breached by Grumman for the reasons set forth in Counts XI and XII in that the E-2C Hawkeye aircraft and its components, including engines, propellers, and automatic flight control systems were completely and wholly inadequate for the purpose intended, safe flight.

104.    The warranty of merchantability was breached by Grumman because the E-2C Hawkeye and its components were not of fair or average quality of other aircraft and aircraft components made by competitors nor was it of the same quality as others manufactured by these defendants in that this one failed to function as required.

105.    The warranty of merchantability was breached by Grumman because the E-2C Hawkeye aircraft was not of fair or average quality of other aircraft and aircraft components including, but not limited to, engines, propellers, and automatic flight control system.

25

106.  As a direct result of the breaches of warranty by these defendants Lieutenant Zilberman lost his life.

WHEREFORE, plaintiff claims money damages.

### Count XIV – Breach of Contract (As To Grumman)

1. – 106. Plaintiff incorporates paragraphs 1-106 by reference.

107.  The United States Government entered into a contract with Grumman for the design and manufacture of an over $80,000,000.00 per copy Airborne Early Warning and Battle Management aircraft.

108.  The purpose of that contract was to provide the United States Navy with an aircraft that would provide a superior all-weather aircraft with battle management, communication, command and control capabilities.

109.  The requirements of that contract were performance-only requirements that did not specify the precise manner of construction.  The contractor Grumman was tasked with the decision about what system would best meet the requirements for performance that included engines, propellers, and automatic flight control systems for mission profile and aircraft carrier environment operations.

110.  The selection, design, manufacture, testing and systems integration of the engine, propeller and automatic flight control system was the responsibility of Grumman.

111.  The entire objective of the contract was to benefit the flight crew of the aircraft, in this instance Lieutenant Zilberman.

112.  It was the objective, purpose and specific intention of the parties that the beneficiary of this contract was the flight crew and the specific objective that he or she be equipped with an aircraft that would provide, under all anticipatable flight conditions and in combat, sufficient thrust, power and controllability so that the aircraft and its crew would survive the fight and the flight.

113.  The defendants breached their contract for the  creditor beneficiary, Lieutenant Zilberman by failing to meet their obligations as set forth in counts XI-XIII.

WHEREFORE, plaintiff claims money damages.

26

## Count XV - Fraud (As To Grumman)

1. – 113.  Plaintiff incorporates paragraphs 1-113 by reference.

114.    The defendants knew, beginning many years ago that the E-2C Hawkeye was unreasonably dangerous and prone to failure.

115.    In numerous meetings, conversations, and communications, Grumman repeatedly failed to disclose to the government the true nature of the flaws of the E-2C Hawkeye and, instead, falsely represented to the government that the aircraft was safe.

116.    Grumman charged the government millions of dollars for an aircraft that could  not and did not provide the aircrew with the basic needs of safe flight.

117.    Grumman committed actual fraud on the U.S. Government and therefore its employee Lieutenant Zilberman by knowingly supplying an unreasonably dangerous and defective E-2C Hawkeye aircraft and aircraft components.

118.    The fraud of Grumman included but is not limited to the following:

a.    Representing that the E-2C Hawkeye was safe when Grumman knew it was not.

b.    Representing that the integration of the T56 engine into the E-2C  Hawkeye was safe and reliable when Grumman knew it was not.

c.    Representing that the integration of the T56 engine into the E-2C  Hawkeye would meet the performance requirements of the  engine  contract when Grumman knew it did not.

d.    Representing that the T56 engine met the reliability requirements of the E-2C Hawkeye power plant performance-only contract when Grumman knew it did not.

e.    Representing that the T56 engine met systems integration requirements for the E-2C Hawkeye performance-only contract when Grumman knew they did not.

f.    Representing that the integration of the NP2000 propeller system into the E-2C Hawkeye was safe and reliable when Grumman knew it was not.

g.    Representing that the integration of the NP2000 propeller into the E-2C

27

Hawkeye would meet the requirements of the propeller contract when Grumman knew it did not.

        h.      Representing that the NP2000 propeller met the reliability requirements of the E-2C Hawkeye propeller system performance-only contract when Grumman knew it did not.

        i.      Representing that the NP2000 met systems integration requirements for the E-2C Hawkeye performance-only contract when Grumman knew they did not.

        j.      Representing that the T56 engine would work with the NP2000 propeller as integrated systems in the E-2C Hawkeye when Grumman knew they would not.

        k.      Representing that Grumman had fixed or cured defects in the T56 engine before installing it on E-2C Hawkeye aircraft when Grumman knew it had not.

        l.      Representing that Grumman had fixed or cured defects in the NP2000 propeller before installing it on E-2C Hawkeye aircraft when Grumman knew it had not.

        m.      Representing that Grumman had provided sufficient maintenance information to allow diagnostics and repair in the field when Grumman knew they had not.

        n.      Representing that Grumman had provided appropriate warnings when Grumman knew it had not.

        o.      Representing that Grumman had provided appropriate operating instructions, operating limitations, operating procedures and emergency procedures when Grumman knew they had not.

        p.      Representing that Grumman had provided safe and reliable systems that would allow our fighting men and women to survive the fight when Grumman knew they had not even for the $80,000,000.00 per airplane.

119.     As a direct result of the fraud and deceit of the defendants plaintiff demands punitive damages.

        WHEREFORE, plaintiff claims money damages.

THE PLAINTIFFS

BY _____
James W. Walsh
Bennett & Walsh, Juris # 003262
PO Box 106
103 Main Street
Ansonia, CT 06401
Telephone: (203) 735-3321

28

RETURN DATE: MAY 1, 2012

| | | |
|---|---|---|
| SHAREIF, AS PERSONAL REPRESENTATIVE OF THE ESTATE OF MIROSLAV-STEVEN ZILBERMAN, ET AL | : | SUPERIOR COURT |
| | : | |
| VS. | : | JUDICIAL DISTRICT OF HARTFORD |
| | : | |
| | : | AT HARTFORD |
| | : | |
| NORTHRUP GRUMAN CORPORATION, ET AL | : | MARCH 26, 2012 |

## DEMAND STATEMENT

The amount, legal interest or property in demand is not less than $2,500.00, exclusive of interests and costs.

THE PLAINTIFFS

By_____
JAMES M. WALSH
BENNETT & WALSH
103 Main Street
Ansonia, CT 06401
Telephone 203-735-3321
Juris No. 003262