# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| KATRINA ZILBERMAN, et. al., | ) | 3:12-CV-00621-WWE |
| | ) | |
| Plaintiffs, | ) | |
| v. | ) | |
| | ) | |
| NORTHROP GRUMMAN CORPORATION, | ) | |
| et. al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | **June 19, 2012** |

## DEFENDANTS'  OPPOSITION TO MOTION TO REMAND

Defendants HAMILTON SUNDSTRAND CORPORATION and UNITED TECHNOLOGIES CORPORATION ("Hamilton") respectfully submit this opposition to Plaintiffs' motion to remand.

## I.

## INTRODUCTION

Plaintiffs' motion to remand rests on the fundamental misconception that the NP2000 Propeller is a "commercial, off-the-shelf, stock item," when in fact, it was specifically developed for the United States Navy, and was never certified for civilian use.  As shown in Hamilton's Notice of Removal, the NP2000 propeller was designed specifically to meet U.S. Navy requirements and technical specifications in connection with a military procurement contract. (Aff. of Charles L. DeGeorge ("DeGeorge Removal Aff.") and exhibits, at Dkt. No. 8, April 23, 2012; Aff. of Kenneth L. Ridley ("Ridley Removal Aff.") and exhibits (filed under seal), at Dkt. No. 9, April 23, 2012).  The NP2000 propeller is used only by the military, and has never been

**ORAL ARGUMENT NOT REQUESTED**

approved for civilian use or installed on any aircraft certified for commercial use. (Aff. of Charles L. DeGeorge, dated June 14, 2012, ¶ 6, filed concurrently herewith.)

Plaintiffs also ignore controlling Second Circuit precedent on the standards applicable to federal officer removal, which holds that a defense contractor acts under the direction of a federal officer where there is "close supervision of the private entity by the Government." *Isaacson v. Dow Chem. Co.*, 517 F.3d 129, 137 (2d Cir. 2008); *see also Beckwith v. General Electric Company*, No. 3:09CV0216(AWT), 2010 WL 1287095, at *1 (D. Conn. Mar. 30, 2010) (involving manufacture of centrifugal pumps and engines for Navy ships); *Contois v. Able Industries Inc.*, 523 F.Supp.2d 155, 159-65 (D. Conn. 2007) (same); *DeMatties v. Acmat Corp.*, No. 3:08CV116(WWE), 2008 WL 4735145, at *1-3 (D. Conn. Oct. 27, 2008) (turbines for Navy ships); *Despres v. Ampco-Pittsburg Corp.*, 577 F.Supp.2d 604, 609 (desalination units and heat exchangers for Navy ships). Defendants easily satisfy this standard based on evidence showing that the NP2000 was produced according to precise Navy specifications and control.

Plaintiffs similarly misconstrue the procedural nature of removal on federal officer grounds with regard to the colorable federal defense requirement. Adjudication of the defense is not required at this preliminary stage, and the federal defense need only be *colorable*. "To be 'colorable,' the defense need not be 'clearly sustainable,' as the purpose of the statute is to secure that the validity of the defense will be tried in federal court. *Isaacson,* 517 F.3d at 139. "[O]ne of the most important reasons for [federal officer] removal is to have the validity of the defense … tried in a federal court." *Willingham v. Morgan*, 395 U.S. 402, 407 (1969). Defendants have made a sufficient showing as to their colorable federal defenses.

In addition, federal question removal jurisdiction is justified because Plaintiffs' claims raise serious federal interests concerning federal procurement contracts and military operations.

Plaintiffs' motion to remand should accordingly be denied because Defendants' Notice of Removal and supporting affidavits satisfy the elements of federal officer removal.

## II.

## FACTUAL BACKGROUND

Plaintiffs' claims arise from the crash of a United States Navy E-2C Hawkeye[1] that impacted waters of the North Arabian Sea in the Gulf of Oman on March 31, 2010, while returning from a Battle Management mission in support of the war in Afghanistan.  (Complaint "Compl." ¶¶ 29-30; Notice of Removal "NOR" ¶ 1, at Dkt. No. 1)  Plaintiffs' decedent was the U.S. Navy pilot of the accident aircraft.

Plaintiffs initially filed their lawsuit in the Connecticut Superior Court, Judicial District of Hartford, asserting product defect claims against the respective defense contractors who supplied the aircraft, engines and propeller system to the U.S. Navy.  Defendants removed the case based on federal officer removal, 28 U.S.C. § 1442(a)(1),  and federal question.  28 U.S.C. §§ 1331, 1441(a).  (Dkt. No. 1)

Plaintiffs allege that Hamilton was "the designer, manufacturer, seller, supplier and systems integrator of the New Propeller 2000, also known as the New Prop 2000, also known as the NP2000" for the Hawkeye.  (Compl. ¶ 6; NOR p. 6, at Dkt. No. 1)    Plaintiffs further allege that the NP2000 propeller was defective because of Hamilton's dangerous and defective "design," "manufacture," "systems integration," "instructions," "warnings," "operating limitations," "operating procedures," and "emergency procedures."  (Compl. ¶ 70.a. – j.; NOR p. 6, at Dkt. No. 1)

---

[1]      "The first Hawkeyes went to sea aboard USS *Kitty Hawk* (CVA 63) with VAW-11 in 1966.  Since that time, they have become a regular part of the fleet's defensive and offensive forces."  *E-2C Hawkeye*, Department Of The Navy – Naval History and Heritage Command, available at:  http://www.history.navy.mil/planes/e2.htm.

**A.**     **Development and Delivery of the Subject NP2000 Propeller to the U.S. Navy**

The NP2000 propellers were produced for the United States Navy in accordance with Navy requirements.  (NOR p. 6, at Dkt. No. 1)  All of Hamilton's activities with respect to the NP2000 propeller, including technical manuals, were developed under close government supervision pursuant to comprehensive and detailed specifications provided by and/or approved by the United States Government and its officers.  (NOR p. 6, at Dkt. No. 1)  Consequently, Hamilton developed the NP2000 propeller in strict accordance with a military procurement contract issued by the United States Navy, Federal Procurement Instrument Contract No. N00383-95-G-004A.  (NOR p. 6, at Dkt. No. 1; Ridley Aff., Ex. "B", Contract, at Dkt. No. 9)

The Navy Contract required that Hamilton provide:  "Logistic Engineering Change Proposal (LECP) to Develop (Non-Recurring Effort) the NP2000-1 Propeller System, for the E-2C and C-2A Aircraft, in accordance with the attached documents:  Technical Specification dtd 15 July 1997 (Attachment 1)[;] Specification Compliance Matrix dtd 15 July 1997 (Attachment 2)[;] Statement of Work dtd 15 July 1997 (Attachment 3)[; and] Development Schedule dtd 15 July 1997 (Attachment 4)."  (NOR p. 6, at Dkt. No. 1; Ridley Aff., Ex. "B", Contract, at Dkt. No. 9)  The Contract incorporated a multitude of precise military specifications, federal standards, military standards, Department of Defense ("DoD") standards, Technical Specifications, Statements of Work, Development Schedules, other government publications and certain other contractor documents, all of which, taken together, constituted the detailed specifications for the NP2000 propeller.  (NOR pgs. 6-7, at Dkt. No. 1)  The specifications called out every design detail and controlled the design and manufacture of the NP2000 from the largest components (such as the Hub and Retention, Blades, Spinner, Bulkhead and Slipring) right down to the smallest components and non-hardware aspects of the NP2000 (such as the Electronic Valve Housing, the Pitch Change Actuator, Pitchlock Valve and software for the NP2000 propeller). (NOR p. 7, at Dkt. No. 1; Ridley Aff., Ex. "B", Contract, at Dkt. No. 9)

The Contract also identified the Federal Officers for Contracting, "L. Kaul", and his Contracting Officer's Representative, "Mr. David Hayworth."  (Ridley Aff., Ex. "B", Contract, at

Dkt. No. 9)  The Contract was administered by Mr. Kent Hall of Naval Inventory Control Point ("NAVICP"), as well as, two Naval Officers who served at different times during the course of the NP2000 development program as Integrated Product Development Team ("IPT") Leads. (DeGeorge Aff., dated June   , 2012, ¶ 5.)   Navy engineers reviewed and approved all specifications, analysis and testing of the NP2000 Propeller. (NOR, at Dkt. 1; DeGeorge Removal Aff. ¶ 5, at Dkt No. 8)  Likewise, the Navy owns and controls the technical instructions for the use of the NP2000 Propeller.  (*Id.*)  The Navy determined all operating procedures and exclusively communicated these instructions to their crew.  (*Id.*)

The Navy's Contract Officers also rated the NP2000-1 Propeller System Contract as a national priority item, "Certified For National Defense Under DMS Reg 1" with a Priority Rating Code of "DO" – "A1".  (Ridley Removal Aff., Ex. "B" p. 1, Box No. 5, at  Dkt. No. 9 (filed under seal))  Under Title I of the Defense Production Act of 1950 ("DPA"), 50 U.S.C. app. § 2061, the President is authorized to require preferential acceptance and performance of contracts and orders supporting certain national defense programs.  Executive Orders 12,919 and 12,742 delegate authority to carry out these programs to the Department of Commerce.  Exec. Order No. 12,919, 59 Fed. Reg. 29,525 (June 3, 1994); Exec. Order No. 12,742, 56 Fed. Reg. 1,079 (Jan. 8, 1991).  The Department of Commerce implements this authority through the Defense Priorities and Allocation System ("DPAS").  15 C.F.R § 700.2 ("Commerce has delegated authorities to place priority ratings on contracts or orders necessary or appropriate to promote the national defense to the government agencies that issue such contracts or orders.")  The DPAS Regulations, 15 C.F.R. § 700 *et. seq.*, were established for this purpose in 1984, superseding the rules for the Defense Materials System ("DMS") and Defense Priorities System ("DPS").  The purpose of the DPAS is to assure timely availability of industrial resources for national defense and emergency preparedness, and to provide an operating system to support rapid industrial response in a national emergency. 15 C.F.R. § 700.1  In this case, the Government rated the Procurement of the NP2000 Propeller System as a "Priority Rated Order"- i.e., "DO", signifying

that it takes preference over unrated orders.  15 C.F.R. § 700.11 (a), (b) (explaining levels of priority and program identification symbols).

On November 21, 2003, Hamilton delivered the subject NP2000 Propeller to the Navy. (DeGeorge Removal Aff., Ex. "A", DD Form 250, at Dkt. No. 8-1)  The DD Form 250 shows that the subject propeller assembly was accepted by the Navy through its designated representative, an office of the Defense Contract Management Command ("DCMC") Hartford. The DD Form 250 for the subject propeller assembly was executed on November 21, 2003 by DCMC employee B. Sullivan.  (DeGeorge Removal Aff., Ex. "A", DD Form 250, at Dkt. No. 8-1)  His signature expressly signified that procurement quality assurance and acceptance of the NP2000 Propeller had been made by him or under his supervision and that the NP2000 Propeller and all of its components "conform to contract except as noted herein or on supporting documents."  (DeGeorge Removal Aff., Ex. "A", DD Form 250, at Dkt. No. 8-1)  Nothing in the accident propeller's Form DD 250 or its supporting documents identify any nonconformities in the propeller.  (DeGeorge Removal Aff., Ex. "A", DD Form 250, at Dkt. No. 8-1)

Contrary to Plaintiffs' claim, the NP2000 Propeller was not a "stock" or "off-the-shelf" item for use on civilian aircraft.  (DeGeorge Aff. dated June  , 2012, ¶ 5.)  The NP2000 propeller was specifically designed for and tested by the Navy over the course of a multiyear development program for which the Navy acted as Propeller System Integrator for the E-2C and C-2A aircraft. (*Id*.)  Similarly, the NP2000 propeller has never been used or installed on a civilian aircraft, or approved for civilian use.  (*Id*. at ¶ 6)  The Federal Aviation Administration ("FAA") has never issued a Type Certificate ("TC") for the NP2000 Propeller.  (*Id*. at ¶ 6)  In February 1999, Hamilton initiated FAA Type Certification for the NP2000 Propeller, which resulted in the FAA's issuance of Special Conditions[2], because the NP2000 employed electronic control and composite blade technology, which were not covered by existing FAA propeller regulations. (*Id*.).  However, the application was terminated before any such certifications were issued.  (*Id*.)

---

[2] Plaintiffs attach a copy of the Special Conditions as Exhibit B to their Motion to Remand, erroneously referring to it as an FAA certification.

6

## III.

## FEDERAL OFFICER REMOVAL AFFORDS DEFENDANT

## MILITARY CONTRACTORS ACCESS TO A FEDERAL FORUM

The Federal Officer Removal statute provides, in pertinent part:

"(a)      A civil action . . . commenced in a State court . . . against . . . any of the
following may be removed by them to the district court of the United States for
the district and division embracing the place wherein it is pending:

(1)      The United States or any agency thereof or any officer (*or any
person acting under that officer*) of the United States or of any agency thereof,
[sued] in an official or individual capacity [for] . . . any act under color of such
office. . ."

28 U.S.C. § 1442(a)(1).  (emphasis added.)

In general, actions can be removed from state court to federal court only where a federal
district court would have had original jurisdiction over the suit.  *Jefferson County v. Acker*, 527
U.S. 423, 430 (1999) (citing 28 U.S.C. § 1441(a)).  The Federal Officer Removal statute expands
federal court jurisdiction.  *In re "Agent Orange" Product Liability Litigation*, 304 F.Supp.2d 442,
446 (E.D.N.Y. 2004).  To qualify for removal under the statute and defeat a motion to remand, a
defendant must show that it:  (1) is a "person" within the meaning of the statute, (2) was acting
under an officer of the United States under color of such office, and (3) is asserting a colorable
federal defense.  *Jefferson County*, 527 U.S. at 431; *Mesa v. California*, 489 U.S. 121, 133
(1989); *Isaacson*, 517 F.3d at 135; *DeMatties*, 2008 WL 4735145, at *1.

"The Supreme Court has mandated a generous interpretation of the federal officer
removal statute."  *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1252 (9th Cir. 2006)
(internal quotations omitted).  Unlike other removal statutes, the federal officer removal statute
should be interpreted broadly and liberally construed.  *Isaacson*, 517 F.3d at 136 ("The words
'acting under' are to be interpreted broadly, and the statute as a whole must be liberally

7

construed" (citing *Willingham*, 395 U.S. at 407)).  In addition, a defendant "need not win his case before he can have it removed."  *Willingham*, 395 U.S. at 407-10 (noting that where defendants simply "put in issue the questions of official justification and immunity; the validity of their defenses should be determined in the federal courts.")

Ignoring controlling authority, the Plaintiffs instead refer this Court to an unpublished district court decision in Illinois, *Adams v. Armstrong International, Inc.*, No. 11-857-GPM, 2012 WL 76159, at *3  (S.D. Ill. Jan. 10, 2012)[3], for the erroneous proposition that the federal officer removal statute should be "narrowly" construed against government contractors. (Motion, p. 4).  Such an interpretation runs directly contrary to the law in this Circuit which has adopted the Supreme Court's uniform mandate for a broad and liberal construction of § 1442. *See Isaacson*, 517 F.3d at 136 ("[T]he policy of providing the protection of a federal forum to federal officers should not be frustrated by a narrow, grudging interpretation of § 1442(a)(1)"; "the words 'acting under' are to be interpreted broadly"; and "the statute as a whole must be liberally construed");  *see also Durham*, 445 F.3d at 1252 (rejecting "narrow" construction of the Federal Officer Removal statute).

Also, § 1442 "does not require the resolution of, *or even a detailed inquiry into*, the merits of the federal defense advanced."  *Jefferson County v. Acker*, 137 F.3d 1314, 1317 (11th Cir. 1998), *rev'd on other grounds*, 527 U.S. 423 (1999) (emphasis added).  For removal, the federal defense need only be plausible; its ultimate validity is not to be determined at the time of

---

[3]     The *Adams* case relies upon *Freiberg v. Swinerton & Walberg Property Services, Inc.*, 245 F.Supp.2d 1144, 1152 n.6 (D. Colo. 2002) for the proposition that the federal officer removal statute should be narrowly construed against government contractors, which is contrary to Second Circuit authority, and has been rejected by other courts. *See Campbell v. Brook Trout Coal, LLC*, No. 2:07-0651, 2008 WL 4415078, at *6 n.9 (S.D.W.Va. Sept. 25, 2008) (rejecting *Freiberg's* rationale and noting that there has been no such signal for a "narrow" interpretation from the Supreme Court, that the words of § 1442 afford no basis for a narrow interpretation, and recognizing that the Congressional purpose in enacting § 1442 was to protect from interference by the states.)  Indeed, removal "inures to the benefit of the contractor because it … is derivative of the government's own immunity from suit where the performance of a discretionary function is at issue." *Campbell*, 2008 WL 4415078, at *6 (quoting *Winters v. Diamond Shamrock Chem. Co.*, 149 F.3d 387, 397 (5th Cir. 1998)).

removal. *Winters v. Diamond Shamrock Chem. Co.,*, 149 F.3d 387, 400 ("[D]efendants need not prove the asserted defense, but need only articulate its 'colorable' applicability to the plaintiffs' claims.")

## A.      Hamilton is a "Person" Under the Federal Officer Removal Statute

Plaintiffs correctly concede that Hamilton meets this first requirement.  It is established that corporate entities qualify as persons under § 1442(a).  *Isaacson*, 517 F.3d at 136.

## B.      Hamilton was Acting Under an Officer of the United States Under Color of Such Office in Developing the Subject NP2000 Propeller System

To satisfy the requirement for acting under an officer of the United States under color of such office, a Defendant "must show a nexus, a 'causal connection' between the charged conduct and asserted official authority."  *Jefferson County*, 527 U.S. at 431 (quoting *Willingham*, 395 U.S. at 409).  That is, "a defendant must show that the act that is subject to the lawsuit has arisen out of the acts that occurred because of what that defendant was asked to do by the Government."  *DeMatties*, 2008 WL 4735145 at *2 (citing *Isaacson*, 517 F.3d at 137).  In assessing removability, the district court must credit a defendant's theory of the case when determining the existence of a causal connection.  *DeMatties*, 2008 WL 4735145 at *2 (citing *Jefferson County*, 527 U.S. at 432).  "Translated to non-governmental corporate defendants, such entities must demonstrate that the acts for which they are being sued… occurred *because of* what they were asked to do by the Government."  *Isaacson*, 517 F.3d at 137 ("To show causation, Defendants must only establish that the act that is the subject of Plaintiffs' attack… occurred *while* Defendants were performed their official duties"); *Allen v. CBS Corp.*, No. 3-09-cv-1112(JCH), 2009 WL 4730747, at *2 (D. Conn. Dec. 1, 2009) (noting that defendants need only establish a general connection between the action sued upon and the governmental function defendants were fulfilling).  The bar for this requirement is "quite low."  *Isaacson*, 517 F.3d at 137.

Plaintiffs' claims directly arise out of Hamilton's performance of its duties under the Navy's procurement contract, and thus Hamilton meets this prong of federal officer removal. Plaintiffs argue that because the NP2000 was a stock product, Hamilton was not acting under a federal officer.  However, the NP2000 propeller was not a stock item, but rather specifically designed for and tested by the Navy over the course of a multiyear development program for which the Navy acted as Propeller System Integrator for the E-2C and C-2A aircraft.  (DeGeorge Aff., dated June  , 2012, ¶ 5.)  Navy engineers reviewed and approved all specifications, analysis and testing of the NP2000 Propeller. (NOR, at Dkt. No. 1; DeGeorge Removal Aff. ¶ 5, at Dkt. No. 8)  The specifications that Hamilton was required to comply with called out every design detail and controlled the design and manufacture of the NP2000 from the largest components (such as the Hub and Retention, Blades, Spinner, Bulkhead and Slipring) right down to the smallest components and non-hardware aspects of the NP2000 (such as the Electronic Valve Housing, the Pitch Change Actuator, Pitchlock Valve and software for the NP2000 propeller). (NOR p. 7, at Dkt. No. 1; Ridley Aff., Ex. "B", Contract, at Dkt. No. 9 (filed under seal))

Furthermore, the Government rated the NP2000 Propeller System Contract as a "DO – A1" priority "rated" order for "National Defense," which subjected Hamilton to even greater scrutiny.   The building of the NP2000 propeller was closely supervised by the Navy, as demonstrated by the execution of the DD250 "Material Inspection and Receiving Report" by Mr. Sullivan (with no waivers or deviations noted).  Plaintiffs' argument that the DD250 was merely an "invoice of acceptance" ignores their own evidence at Exhibit "B" of their motion, which states that the DD250 is "evidence of Government contract quality assurance at origin or destination." *See also Miller v. Diamond Shamrock Co.*, 275 F.3d 414, 420 (5th Cir. 2001) ("[t]he government's issuance of a DD Form 250, Material Inspection and Receiving Report, further establishes the item's conformity.")

10

### C.      Hamilton Asserts Colorable Federal Defenses

"As to the third prong, that the defendant raise a colorable federal defense, the Court should rely on each defendant's assertions for the basis of the defense and should not consider whether the defense will ultimately prevail." *DeMatties*, 2008 WL 4735145, at *3 (citing *Willingham*, 395 U.S. at 407).  Regarding this prong, the Supreme Court has "rejected a narrow, grudging interpretation of the statute." *Jefferson County*, 527 U.S. at 431 (internal quotations omitted.)  To require a "clearly sustainable defense," rather than simply a "colorable defense," would defeat the purpose of the statute. *Id.* at 432.  Consequently, a defendant need not virtually "win his case before he can have it removed." *Id.* at 431.  Instead, "'the *validity* of the defence… is a distinct subject… [that] has no connection whatever with the question of jurisdiction.'" *Mesa*, 489 U.S. at 129.  Therefore, at this stage, Hamilton need only show that one of its four asserted federal defenses is plausible in order to defeat the remand motion. *See Jefferson County*, 527 U.S. at 431.

### 1.      The Government Contractor Defense

Hamilton satisfies the third prong of the Federal Officer Removal statute based on  the government (or military) contractor defense.  (NOR p. 7, at Dkt. No. 1)  The defense shields a military contractor from liability under state law when (1) the government approved reasonably precise specifications, (2) the product conformed to those specifications, and (3) the contractor warned the government about risks of the product that were known to the contractor but not known to the government. *Boyle v. United Technologies Corp.*, 487 U.S. 500, 512 (1988).

The affidavits in support of Hamilton's removal, and the affidavit concurrently filed with this opposition, show that the Navy approved reasonably precise specifications for the NP2000 Propeller developed by Hamilton (i.e., Contract and related Specifications), that the NP2000 Propeller conformed to the Navy's specifications (e.g., DD250), and that the Navy was warned of the risks of the product that were known to Hamilton (e.g., "The Navy qualification process for the NP2000 included the requirement that the contractors perform an analysis of the failure

modes, effects and criticality of the military equipment," and that ""Hamilton Sundstrand conducted such an analysis, which verified the design integrity and documented the reliability risks," and further that "Navy engineers reviewed and approved the analysis.")  (NOR, at Dkt. No. 1; DeGeorge Removal Aff., at Dkt. No.8)

Plaintiffs argue the defense is not colorable, because the NP2000 was a stock item.  But as explained earlier, the NP2000 was specifically designed for and tested and approved by the Navy over the course of a multiyear development program for which the Navy acted as Propeller System Integrator for the E-2C and C-2A aircraft.  It was thus not a stock item.

Plaintiffs also cite to copy of the "Federal Register," for the assertion that "Hamilton applied for, and received, certification for the NP2000 from the [FAA]."  (Motion, p. 3)  However, the Federal Register is neither a "Type Certificate" nor a "Certification."  Rather, it is simply a list of "Special Conditions" that Hamilton would have had to comply with had it continued the process for seeking a Type Certificate for the NP2000 Propeller.  But no such Type Certificate was issued for the NP2000, and the NP2000 has never been installed on any aircraft certified for commercial use.  (DeGeorge Aff. dated June   , 2012, at ¶ 6)  Regardless, application of the government contractor defense depends on whether the military carefully reviews and approves the design, which it indisputably did in this case.  *See Brinson v. Raytheon Co.,* 571 F.3d 1348 (11th Cir. 2009) (government contractor defense applies despite fact that product design was patented before it was approved by the U.S. Air Force).

2.   **Hamilton Asserts a Colorable Defense Under the Combatant Activities Exception to the Federal Tort Claims Act ("FTCA")**

The combatant activities exception, 28 U.S.C. § 2680(j), preempts tort claims "arising out of the combatant activities of the military… during time of war."  It creates a federal common law defense that immunizes manufacturers from state tort suits arising from war.  *Bentzlin v. Hughes Aircraft Co.*, 833 F.Supp. 1486, 1492 (C.D. Cal. 1993).  "Such a defense for manufacturers of equipment that allegedly malfunctions during combat arises from the fact that certain federal interests implicated in war - such as secrecy of wartime strategy and military

morale - would be undermined by state tort suits against such manufacturers." *Id.* at 1493. Accordingly, the Supreme Court has said that the "combatant activities" exception to the FTCA "paint[s] with a far broader brush" than other FTCA exceptions that remove claims arising out of a subset of injuries from federal court jurisdiction. *See Dolan v. U.S. Postal Serv.*, 546 U.S. 481, 489-90 (2006) (contrasting the "combatant activities" exception in § 2680(j) with the mail delivery exception in § 2680(b), which preserves immunity only for three types of loss).

As such, "combatant activities" cover "not only physical violence, but activities both necessary to and in direct connection with actual hostilities." *Johnson v. United States*, 170 F.2d 767, 770 (9th Cir. 1948) ("Aiding others to swing the sword of battle is certainly a 'combatant activity'"); *Koohi v. United States*, 976 F.2d 1328, 1333 n.5 (9th Cir. 1992) ("The tracking and attempted identification of an unidentified and apparently threatening aircraft is a necessary adjunct of the power of self-defense [and therefore], under *Johnson*, [qualifies] as 'combatant activities'"). Likewise, courts have broadly construed "during time of war" to include undeclared wars. *Rotko v. Abrams*, 338 F.Supp. 46, 47-48 (D. Conn. 1971); *Koohi*, 976 F.2d at 1333-1336 (noting that the phrase "time of war" has come to mean periods of significant armed conflict rather than Congressional declarations of war).

Plaintiffs' claims fall under the combatant activities exception to the FTCA.  As the Notice of Removal indicates, "[t]his case arises from the crash of a United States Navy E-2C Hawkeye… that impacted waters of the North Arabian Sea in the Gulf of Oman while returning from a Battle Management mission in support of OPERATION ENDURING FREEDOM[4] over the territories of Afghanistan and Pakistan."  (NOR ¶ 1, at Dkt. No. 1; *see also* Comp. ¶¶ 29-30) The same preemption considerations that underlie the government contractor defense, which turns on the FTCA's "discretionary function exception", 28 U.S.C. § 2680(a), apply equally to preemption under the "combatant activities exception" 28 U.S.C. § 2680(j); *see, e.g.*, *Aiello v.*

---

[4]    "OPERATION ENDURING FREEDOM" ("OEF") is the official name used by the United States Government for the War in Afghanistan. (*Fact Sheet: Operation Enduring Freedom*, U.S. Dep't State (Jan. 31, 2006), *available at* http://usinfo.org/wf-archive/2006/060131/epf207.htm).

*Kellogg, Brown & Root Services, Inc.*, 751 F.Supp.2d 698, 710-11 (S.D.N.Y. 2011); *Saleh v. Titan*, 580 F.3d 1, 6-11 (D.C. Cir. 2009).

Plaintiffs' cursory argument regarding the combatant activity exception incorrectly states that this defense does not apply to military contractors. However, courts have held that private contractors are also shielded from liability by the combatant activities exception to the FTCA, just as the government contractor defense shields private contractors from liability under the discretionary function exception to the FTCA. *See e.g. Koohi*, 976 F.2d at 1336-37; *Bentzlin*, 833 F.Supp. at 1492-95; *Flanigan v. Westwind Technologies, Inc.*, No. 07-1124, 2008 WL 6714874, at *8 (W.D. Tenn. Sept. 15, 2008); *see also Al Shimari v. CACI Int'l, Inc.*, 658 F.3d 413, 419 (4th Cir. 2011) (interests underlying combatant activity exception are "implicated even when the suit is brought indirectly—against a civilian contractor—rather than directly against the United States itself") (citing *Saleh v. Titan Corp.*, 580 F.3d 1 (D.C. Cir. 2009)). Under federal officer removal, defendants are absolutely entitled to have their federal defenses considered in a federal forum, so long as those defenses are "colorable." Plaintiffs offer no reason why Hamilton's combatant activities exception defense is not colorable.

3. **Hamilton Asserts a Colorable Political Question Doctrine Defense**

The U.S. Constitution restricts the federal courts' jurisdiction to justiciable cases and controversies. U.S. Const. art. III, § 2, cl. 1. Cases subject to the political question doctrine are nonjusticiable. In *Baker v. Carr*, the Supreme Court listed six independent factors for identifying political question cases in which courts defer to the other coordinate branches. 369 U.S. 186, 217 (1962). The presence of any one of these factors is sufficient to render an issue nonjusticiable. *Banner v. United States*, 303 F.Supp.2d 1, 9 n.9 (D. D.C. 2004), *aff'd*, 428 F.3d 303 (D.C. Cir. 2005).

The first *Baker* factor is a "textually demonstrable constitutional commitment of the issue to a coordinate political department." *Baker*, 369 U.S. at 217. It is axiomatic that control of the

14

military is textually committed to the Executive by the U.S. Constitution. U.S. Const. art. I, § 8, cls. 11-16 and art. II, § 2. Thus, issues involving military training, equipping military forces and planning military missions are reserved to the Executive. *See Gilligan v. Morgan*, 413 U.S. 1, 10 (1973). Similarly, military strategy decisions are considered nonjusticiable. *Rappenecker v. United States*, 509 F.Supp. 1024, 1030 (N.D. Cal. 1980). The first *Baker* factor is met in cases which require a review of military decision-making or combat training. *See e.g. Aktepe v. United States*, 105 F.3d 1400, 1403-04 (11th Cir. 1997); *Tiffany v. United States*, 931 F.2d 271, 277-78 (4th Cir. 1991); *Whitaker v. Kellogg Brown & Root, Inc*., 444 F.Supp.2d 1277, 1281 (M.D. Ga. 2006); *Bentzlin*, 833 F.Supp. at 1497. As stated in the Notice of Removal (NOR p. 9, at Dkt. No. 1) and as Plaintiffs acknowledge in their motion (Motion, p. 11), the contributory negligence and comparative fault of the pilot and/or the Navy will necessarily be evaluated in this case. Consequently, this factor alone establishes a colorable political question doctrine defense. Other *Baker* factors are also implicated by Plaintiffs' case, including the lack of judicially discoverable and manageable standards for resolving it. *Baker*, 369 U.S. at 217.

Plaintiffs argue this defense is not colorable because it is "irrelevant" to their state tort law claims. (Motion, p. 11) This misses the point. Regardless, Hamilton is merely required to assert a "colorable" defense in order to have it considered in a federal court. Hamilton here satisfies this "very low" threshold by averments in its Notice of Removal which state that Plaintiffs' decedent was killed during a combat sortie on return from a Battle Management mission over Afghanistan. (NOR ¶ 1, at Dkt. No. 1) It is certainly more than plausible that military decisions will accordingly be evaluated in connection with litigation over the cause of the accident, including the conduct of decedent, his crew, the Navy's maintenance practices and the overall Naval Aviation Training and Operations apparatus *vis-à-vis* the aircraft, engine and NP2000 propeller.

15

4.     **Hamilton Asserts a Colorable State Secrets Defense**

The state secrets privilege is a federal common law doctrine that allows the government to deny discovery of military secrets. *United States v. Reynolds*, 345 U.S. 1, 7-10 (1953); *Zuckerbraun v. General Dynamics Corp.*, 935 F.2d 544, 546-48 (2d Cir. 1991). The privilege belongs to the government and must be asserted by it. Where there is a "reasonable danger that compulsion of the evidence will expose military matters which, in the interest of national security, should not be divulged … , the occasion for the privilege is appropriate, and the court should not jeopardize the security which the privilege is meant to protect by insisting upon an examination of the evidence, even by the judge alone, in chambers." *Reynolds*, 345 U.S. at 10. Once the privilege is properly invoked, a lawsuit must be dismissed if the government's claim of the privilege prevents a plaintiff from proving a prima facie case or prevents the defendant from establishing one or more defenses. *Kasza v. Browner*, 133 F.3d 1159, 1166 (9th Cir. 1998).

Plaintiffs make the conclusory argument that no military secrets are implicated because the NP2000 is a "commercial, off-the-shelf, 'stock' item," and because E-2 aircraft are used by foreign countries. (Motion, p. 10) As explained above, the NP2000 propeller is not akin to light bulb or ladder that the government orders as stock. It was designed and developed according to exacting and detailed Navy specifications, control and approval, in a multi-year development program. Also, the NP2000 Propeller is not commercially available.

Plaintiffs' unfounded assumption about the lack of military secrets based on foreign military sales of E-2 aircraft is equally without merit. The DoD News Releases attached to Plaintiffs' motion do not support Plaintiffs' claim. The releases show that the United States does in fact share military secrets and technologies with its Coalition partners and military allies; otherwise, the technology would be subject to exploitation by enemies against whom the shared technology is being deployed.

In addition, Plaintiffs' argument fails because the Government has not yet had an opportunity to assert the privilege. The Government would not be in a position to evaluate the privilege until the parties to this case commence discovery against the Government, which has

not yet been undertaken.   Plaintiffs' argument also ignores the fact that this case arises from a combat sortie to Afghanistan, which is exactly the setting in which the Government typically asserts a state secrets privilege.

## IV.

## REMOVAL IS ALSO APPROPRIATE ON
## FEDERAL QUESTION JURISDICTION GROUNDS

This action is also removable because it presents a substantial federal question.  *See* 28 U.S.C. §§ 1441; 1331.  As noted in Defendants' Notice of Removal, it is also "well settled that th[e] statutory grant" of federal-question jurisdiction "support[s] claims founded upon federal common law as well as those of a statutory origin." *See National Farmers Union Ins. Cos. v. Crow Tribe of Indians*, 471 U.S. 845, 850 (1985). *See also Scrogin v. Rolls-Royce Corp.*, 3:10CV442 WWE, 2010 WL 3547706 (D. Conn. Aug. 16, 2010) (case involving active-duty military officers, an accident that occurred during a military operation, and an allegedly defective engine that was sold exclusively to military, warrants federal jurisdiction)

Plaintiffs' third-party beneficiary claims for breach of federal procurement contracts are also governed by federal common law and thus present federal questions. *See Sec'y of State For Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705-06 (4th Cir. 2007) ("Civil liabilities arising out of the performance by a private contractor of federal procurement contracts are governed by federal common law").   Plaintiffs' reliance on *Miree v. DeKalb County*, 433 U.S. 25 (1977) (Motion, p. 13), is misplaced.  *Miree*, a diversity suit, held that the issue of standing to assert a third-party beneficiary suit to enforce a contract with the FAA was controlled by state law. *Id*. at 30.  Importantly, no federal interest was implicated as to the narrow question at issue in *Miree*. *Id*. at 29-32.  Thus, contrary to Plaintiffs' suggestion, *Miree* does not stand for the general proposition that state law governs *all* third-party beneficiary suits seeking to enforce federal contracts.  Indeed, in cases where the rules governing third-party beneficiary suits *do* implicate important federal interests, courts routinely hold that federal common law governs.

*Price v. Pierce*, 823 F.2d 1114, 1120 (7th Cir. 1986) (holding that, with respect to certain HUD contracts, "the issue of third-party beneficiary status is one of federal common law," and distinguishing *Miree* because the "case for federal law was much weaker" there); *GECCMC 2005-C1 Plummer St. Office Ltd. P'ship v. JP Morgan Chase*, 671 F.3d 1027, 1033 (9th Cir. 2012) (holding that federal common law governs whether GE may sue as a third-party beneficiary of a contract with the FDIC).

      Here, unlike the contract at issue in *Miree*, the rights and obligations of a defense contractor under a procurement contract with the United States military undoubtedly implicate important federal interests. For example, Plaintiffs' contract claims are premised on alleged product defects, the design for which was specified and approved by the U.S. Navy. Accordingly, third-party beneficiary suits to enforce military procurement contracts do raise federal interests and are governed by federal common law. *See Trimble*, 484 F.3d at 702, 706 (applying federal common law to determine third-party beneficiary status under "a contract for military goods between the United States and a domestic military contractor"); *see also McMahon v. Presidential Airways, Inc.*, 410 F.Supp.2d 1189, 1201 (M.D. Fla. 2006) (wrongful death claims brought against military contractor by survivors of three U.S. soldiers killed in Afghanistan implicate important federal interests and arise under federal law); *Boyle v. United Technologies Corp.*, 487 U.S. 500, 506 ("it is plain that the Federal Government's interest in the procurement of equipment is implicated by suits such as the present one - even though the dispute is one between private parties.") Federal-question jurisdiction thus provides by an independent basis for removal of this case.

**V.**

**CONCLUSION**

For all of the foregoing reasons, and those stated in Defendants' Notice of Removal, Plaintiffs' motion to remand should be denied.


DATED:  June 19, 2012

Respectfully submitted,

      /s/ James H. Rotondo

James H. Rotondo (ct05173)
John W. Cerreta (ct28919)
DAY PITNEY LLP
242 Trumbull Street
Hartford, Connecticut  06103
(860) 275-0100 / (860) 275-0343 Fax
Email:  jrotondo@daypitney.com
Email:  jcerreta@daypitney.com

And

Alan H. Collier (phv05406)
Mark R. Irvine (phv05404)
Darrell M. Padgette (phv05405)
FITZPATRICK & HUNT,
TUCKER, COLLIER, PAGANO, AUBERT, LLP
633 West Fifth Street, 60th Floor
Los Angeles, California 90071
(213) 873-2100; (213) 873-2125 Fax
E-mail:  alan.collier@fitzhunt.com
E-mail:  mark.irvine@fitzhunt.com
E-mail:  darrell.padgette@fitzhunt.com

Attorneys for Defendants
HAMILTON SUNDSTRAND
CORPORATION and UNITED
TECHNOLOGIES CORPORATION

## **CERTIFICATION OF SERVICE**

I HEREBY CERTIFY that on this date a copy of foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

<u>/s/ James H. Rotondo</u>
James H. Rotondo